**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| NORTON LILLY INTERNATIONAL, INC.<br><br>**Plaintiff,**<br><br>v.<br><br>PUERTO RICO PORTS AUTHORITY<br><br>**Defendant** | **Civil No. 2018cv1012**<br><br>**In Admiralty** |

## COMPLAINT

**COMES NOW** Plaintiff, Norton Lilly International, Inc., by its undersigned attorney, for its Complaint In Admiralty for Declaratory Judgment against Defendant Puerto Rico Ports Authority, respectfully states, alleges and prays as follows:

### I. JURISDICTION AND VENUE

**1.** Plaintiff Norton Lilly International, Inc. ("NLI") brings this action for a declaratory judgment pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure, for the purpose of determining a question in actual controversy related Plaintiff's obligation, if any, to pay the Puerto Rico Ports Authority over $1,500,000.00 in unidentified port expenses, fees, and charges.

**2.** This is a case of admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, as will more fully appear, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

**3.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) as all relevant events giving rise to the claims occurred in this district.

## II. PARTIES TO THIS ACTION

**4.** Plaintiff NLI is a corporation created and organized under the laws of the state of Alabama dedicated, among other things, in the business of providing port and vessel agency services to ships calling port in Puerto Rico and over seventy ports around the world. NLI's Puerto Rico office is located at MAI Center Building, 2000 Kennedy Ave. Suite 204, San Juan.

**5.** The Puerto Rico Ports Authority ("PRPA") is a public corporation created and organized under the provisions of its organic act ("Puerto Rico Ports Authority Act"), 23 P.R. Laws Ann. §§ 331-52, et seq., with capacity to sue and be sued.

## III. FACTUAL ALLEGATIONS

**6.** For over 175 years, NLI has been engaged in different aspects of ocean shipping. As part of its services, NLI provides port agency services to its principals (vessel owners) through the United States, Canada, Caribbean, Central and South America.

**7.** In Puerto Rico, NLI provides port agency services to owners and/or operators of containers ships, car carriers, bulk carriers, tankers, among others, whose ships call port around the Island.

**8.** PRPA is a public corporation created by law and is empowered by its enabling act to develop, improve, own, operate and manage any and all types of marine transportation facilities and services.

**9.** In order to exercise such powers, PRPA has approved regulations, commonly referred to in the maritime industry as "tariffs", which have the force and effect of law and are binding on all users of the maritime ports administered by PRPA.

**10.** Tariff M-1-7 was effective from December 2010 until January 20, 2017.

**11.** Tariff M-1-8, which became effective on January 21, 2017, repealed and replaced Tariff M-1-7.

**12.** Both tariffs define "Ship or Vessel Agent" as a person or legal entity authorized to represent vessel owners or captains at any of the PRPA facilities in which a maritime operation is conducted and who is responsible for the accomplishment of the terms and conditions of the tariff, including the payment of charges assessed under said Tariff for the use of facilities as port services and docking.

**13.** At all relevant times herein, NLI has complied with the terms and conditions set forth on the applicable tariffs.

**14.**  At all relevant times herein, PRPA has not canceled NLI's credit privileges as provided on Tariff 12.2 of the M-1-7 or Tariff 13.4 of the M-1-8 for delinquent accounts.

**15.**  At all relevant times herein, PRPA has never collected alleged NLI's outstanding balances from NLI's pledges, bonds or guarantees as provided on Tariff 12.2 of the M-1-7 or Tariff 13.4 of the M-1-8 for delinquent accounts.

**16.**  However, PRPA alleges NLI's owes between $994,236.33 to over $1,500,000.00 in unidentified invoices, charges and fees.

**17.**  NLI has repeatedly requested PRPA to provide an account statement in order to be able to verify its records and determine the nature and veracity, or lack thereof, of the alleged outstanding invoices, to no avail.

### COUNT I – Claims Time Barred Under Laches

**18.**  Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth at length herein.

**19.**  Upon information and belief, several if not all of the alleged unpaid port expenses were incurred more than a year before the filing of this Complaint.

**20.**  Upon information and belief, the alleged unpaid port expenses date back anywhere from 2008 to 2017.

**21.**  In an admiralty case, maritime law and the equitable doctrine of laches govern the time to sue by utilizing the benchmark limitation period contained in the most analogous statute. State

statutes of limitations for analogous claims are generally a factor in determining whether there has been a sufficient delay to invoke the laches defense.

**22.** The most analogous statute of limitations for actions to collect port expenses is Article 948(3) of the Puerto Rico Commerce Code which provides that in part that "[a]ctions to recover … port expenses" shall prescribe within one-year "to be counted from the time the expenses were incurred". 10 Laws of P.R. Ann § 1910.

**23.** PRPA has unreasonably delayed the filing of a judicial action to collect the alleged unpaid port expenses, resulting in prejudice to NLI, and has taken no action that may be interpreted as tolling the statute of limitations.

**24.** The limitations period under the Commerce Code may be interrupted only: (1) by suit or any judicial proceeding brought against the debtor, (2) by the debtor's acknowledgment of the obligations, or (3) by the renewal of the instrument on which the right of the creditor is based.  10 Laws of P.R. Ann § 1903.

**25.** PRPA has not filed suit in any forum against NLI to collect the alleged unpaid port expenses.

**26.** NLI has not acknowledged the alleged obligation to pay said port expenses.

**27.** The alleged unpaid port expenses, charges, and fees do not arise out of an agreement or instrument between PRPA and NLI that may be renewed.  They arise from applicable PRPA tariffs and

regulations. Consequently, the limitations period may not be tolled by the renewal of an instrument.

**28.** Therefore, all claims for alleged unpaid port expenses, charges, and fees which were incurred more than a year before the filing of this Complaint are time barred under the doctrine of laches.

**COUNT II – Wharfage Based on Incorrect Vessel Categorization**

**29.** Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth at length herein.

**30.** "Wharfage" is defined as the charge assessed by PRPA for the use of wharves in receiving and delivering cargo to and from the cargo vessels, ferries or other vessels designed for carriage of any type of cargo. Wharfage charges are assessed for each inbound and outbound cargo movement over the wharf by a vessel, or between two vessels.

**31.** The M/V MIDAS is a roll-on-roll of container ship registered in Finland, built in 1990, with a gross tonnage of 5,873.

**32.** At all relevant times herein, NLI has been the port agent for the MIDAS.

**33.** According to the M-1-7 and the M-1-8 a "Cargo Vessel" is defined as any vessel designed for the purpose of carrying Cargo from one port to another, and "Small Cargo Vessels" are defined as relative small vessels in size, dimension and capacity usually used for transporting some cargo (such as bulk or loose cargo

packed in boxes of different size, measure and weight), between Puerto Rico, adjacent islands and any near point at the Caribbean.

**34.** The MIDAS is not a Small Cargo Vessel because it does not have the features described in the Tariff definition of a Small Cargo Vessel. Specifically, the MIDAS: (1) carries containerized cargo as opposed to bulk or loose cargo in boxes; and (2) it is not of relative small size, dimension and capacity, when compared to the small cargo vessels, commonly referred to as "goletas", engaged in the shipping routes between Puerto Rico and other islands in the Caribbean.

**35.** Nevertheless, PRPA assesses wharfage charges on the MIDAS as if it were a Small Cargo Vessel.

**36.** Upon information and belief, PRPA assesses wharfage charges on the MIDAS as if it were a Small Cargo Vessel based on its interpretation of a drafting error on the M-1-7 which provides that "Wharfage Charges shall be assessed to every Small Cargo Vessel less [weighing] **less than 99 GRT and over 400 GRT**, entering and using a PRPA Port, Adjacent Islands, and the Caribbean". The tariff additionally provides the wharfage rates for tonnage starting under 99 GRT up to 400 GRT. (See Tariff 8.2.7 of the M-1-7). Thus, the Tariff 8.2.7 is meant to apply to vessels weighing up to 400 gross tons as opposed to vessels under 99 GRT and over 400 GRT.

**37.**   The drafting error on referenced in the preceding paragraph was corrected on the M-1-8 which provides in relevant part: "Wharfage Charges shall be assessed to every Small Cargo Vessel **less than 99 GRT and up to 1,000 GRT**, entering and using a PRPA Port, Adjacent Islands, and the Caribbean on the basis of the charge per weight established on this section or the Tariff for Cargo, whichever will yield greatest revenue."  The tariff then provides the wharfage rates applicable depending on the vessel's gross tonnage.

**38.**   Further, the M/V MIMER, the MIDAS' sister ship, is identical in size, weight, design, construction, type of cargo, and is engaged in the similar shipping routes.  Despite the fact that the MIDAs and the MIMER are identical in all respects, PRPA assesses wharfage charges on the MIMER under the tariffs applicable for full/empty containers, flat-beds and chassis instead of the Small Cargo Vessel wharfage tariffs it uses to assess wharfage for the MIDAS.

**39.**   NLI has paid PRPA for all wharfage charges related to the MIDAS applying the correct and applicable wharfage tariffs as opposed to the Small Cargo Vessel tariff.  With each payment, NLI submitted a Claim or protest to PRPA, stating that the MIDAS is not a Small Cargo Vessel and explaining the correct and applicable tariffs.  To date, PRPA has not ruled or acted on any of the MIDAS

related claims filed by NLI as required by Tariff 12.3 of the M-1-7 and 13.3 of the M-1-8.

**40.** Therefore, the MIDAS is not a Small Cargo Vessel under the provisions of the Tariffs M-1-7 and M-1-8 and NLI has paid the correct wharfage charges related to said ship.

## COUNT III – Wharfage Based on Incorrect Cargo Categorization

**41.** Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth at length herein.

**42.** "Wharfage" is defined as the charge assessed by PRPA for the use of wharves in receiving and delivering cargo to and from the cargo vessels, ferries or other vessels.  Therefore, the wharfage charge will depend on the "use" given to either receive or deliver cargo from or to a vessel.  The type of use, in turn, depends on the type of cargo being loaded or unloaded onto or from the ships.

**43.** Pursuant to Tariff M-1-7, cargo moved in containers must pay wharfage at $1.9942 per ton or fraction thereof.  Said tariff has no exception to the type of cargo inside the containers.

**44.** Tariff M-1-7 also provide that motor vehicles and motorcycles transported as Cargo Units pay $7.2537 per ton or fraction thereof.

**45.** When shippers moving cargo on NLI's principal's vessels shipped motor vehicles or motorcycles inside containers, PRPA assessed wharfage charges as if they were shipped as separate Cargo Units when they should have assessed the Cargo Moved in Containers wharfage rate.

**46.** The fact that under the M-1-7 motor vehicles and motorcycles inside containers were to pay the Cargo Moved in Containers wharfage is further demonstrated by the fact that the Tariff 8.2.2 of the M-1-8 now expressly excludes motor vehicles form the Cargo Moved in Container wharfage rate.

**47.** Therefore, wharfage charges for motor vehicles and motorcycles shipped inside containers during the period the M-1-7 was valid must be assessed using the tariff for Cargo Moved in Containers and not the tariff for motor vehicles and motorcycles transported as Cargo Units.

### COUNT IV – Unconstitutional Assessment of Enhanced Security Fees for Motor Vehicles

**48.** Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth at length herein.

**49.** On September 2, 2011, PRPA approved Regulation 8067 titled REGULATION FOR IMPLEMENTING THE NECESSARY MEANS TO GUARANTEE AN EFFICIENT FLOW OF COMMERCIAL TRAFFIC IN THE SCANNING OF INBOUND CARGO CONTAINERS, TO IMPROVE SECURITY AND SAFETY AT THE PORT FACILITIES, AND/OR TO OTHERWISE IMPLEMENT THE PUBLIC POLICY OF THE COMMONWEALTH OF PUERTO RICO DELEGATED UPON THE PORTS AUTHORITY, to implement a non-intrusive cargo scanning program at the Port of San Juan.

**50.** Regulation 8067 provided that port agents such as NLI must pay PRPA an Enhanced Security Fee ("ESFs") of $4.00 per ton for motor vehicles.

**51.** The US District Court for the District of Puerto Rico found that the assessment of ESFs on ocean carriers or agents who neither use nor have the privilege of using the scanning facilities violates the Commerce Clause and enjoined PRPA from collecting ESFs in those cases.   See <u>De Mercadeo v. Vazquez</u>, No. 11-1978 (BJM), 2013 U.S. Dist. LEXIS 150275, at *37, 39, and 44 (D.P.R. Oct. 16, 2013).

**52.** PRPA continued to assess ESFs on motor vehicles that were not scanned and never had the privilege of using the scanning facilities.

**53.** Therefore, ESFs assessed on motor vehicles and motorcycles that were not scanned or did not have the privilege of using the scanning facilities are unconstitutional and violate the Commerce Clause.

### COUNT V – Incorrect Denial of Early Payment Discounts

**54.** Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth at length herein.

**55.** Pursuant to Tariff 12.2 of the M-1-7 and to Tariff 13.2 of the M-1-8, vessel owners and agents who pay wharfage, dockage and port services invoices within five (5) working days from its

receipt may apply a 2% discount on such invoices if they are credit customers of PRPA.

56. At all relevant times herein, NLI has been a PRPA credit customer.

57. At all relevant times herein, NLI applied a 2% discount on all invoices which it paid within five (5) working days from receipt of the invoice, which PRPA sends by email or other electronic means.

58. At all relevant times herein, PRPA emails invoices to NLI one or more days after the invoices' date and considers the invoices' date, as opposed to the email date, when deciding whether the 2% early payment discount was correctly applied by NLI.

59. On many occasions, NLI paid the invoices within five (5) days of receiving the email, but after five (5) days of the invoice date, and applied the 2% credit under the tariff.  However, PRPA, instead of counting the five (5) days from the day the invoice was emailed, counted the five (5) day period from the date on the invoice, which in many times resulted in a denial by PRPA of the right to apply a 2% credit, even though NLI had complied with the tariff requirement to apply such credit.

60. Therefore, the 2% early payment discount must be applied using the date the invoiced was received by NLI as opposed to the date on the invoice itself.

## COUNT VI - Accord and Satisfaction

**61.** Plaintiff repeats and realleges the allegations in the preceding paragraphs as if fully set forth at length herein.

**62.** All of PRPA claims related to cases where NLI paid the MIDAS wharfage under protest and cases where NLI applied the 2% discount under tariff 12.2 of the M-1-7 and 13.2 of the M-1-8 have been discharged by accord and satisfaction.

**63.** Discharge by accord and satisfaction occurs upon the rendering of some performance different from that which was claimed as due and the acceptance of such substitute performance by the claimant as full satisfaction of the claim.

**64.** For accord and satisfaction to apply, the following requisites must exist: (1) a claim which is unliquidated concerning which a bona fide controversy exists; (2) an offer of payment by the debtor; and (3) an acceptance of the offer of payment by the creditor.

**65.** In the cases of MIDAS wharfage payments made under protest by NLI, there were: (1) unliquidated claims were a bona fide controversy existed as to the applicable wharfage charge under the tariff; (2) offers of payment by NLI; and (3) an acceptance by PRPA of the payment tendered by NLI.

**66.** In the cases of 2% discount for early payments, there were: (1) unliquidated claims were a bona fide controversy existed as to the right of NLI to apply a 2% discount; (2) offers of payment by NLI; and (3) an acceptance of the payment tendered by NLI.

**67.** Therefore, PRPA's claims related to the MIDAS wharfage tariff and the 2% discount have all been discharged by accord and satisfaction.

**WHEREFORE,** Plaintiff prays for the entry of a declaratory judgment by this Court finding and declaring as follows:

A. That all claims for alleged unpaid port expenses, charges, and fees which were incurred more than a year before the filing of this Complaint are time barred under the doctrine of laches;

B. That the MIDAS is not a Small Cargo Vessel under the provisions of the Tariffs M-1-7 and M-1-8 and not subject to Small Cargo Vessel wharfage under said tariffs;

C. That wharfage charges for motor vehicles and motorcycles shipped inside containers during the period the M-1-7 was valid must be assessed using the tariff for Cargo Moved in Containers and not the tariff for motor vehicles and motorcycles transported as Cargo Units;

D. That ESFs assessed on motor vehicles and motorcycles that were not scanned or did not have the privilege of using the scanning facilities are unconstitutional and violate the Commerce Clause;

E. That all of the 2% early payment discounts were properly applied by NLI;

**F.** That PRPA's claims related to the MIDAS wharfage tariff and the 2% discount have all been discharged by accord and satisfaction;

**G.** That NLI does not owe monies to PRPA;

**H.** Together with any other remedy that the Court deems proper under law or equity.

**RESPECTFULLY SUBMITTED** in this 11th day of January 2018.

> **CASTAÑER LAW OFFICES PSC**
> MAI CENTER
> 2000 Kennedy Ave, Ste 204
> San Juan, PR 00920
> Tel. (787) 707-0802
> Fax: (888) 227-5728
> Attorney for Plaintiffs
> E-mail: manager@castanerlaw.com
>
> By: S/Alberto J. Castañer
> **Alberto J. Castañer**
> USDC-PR No. 225706